Eric Edward Nord
CRIST, KROGH & NORD, PLLC
The Securities Building
2708 Second Avenue North, Suite 300
Billings, MT  59101
Telephone:  (406) 255-0400
Facsimile:  (406) 255-0697
Email:  enord@cristlaw.com

Emma L. Savory
HUSCH BLACKWELL LLP
1700 Lincoln St., Suite 4700
Denver, CO  80203
Telephone:  (303) 749-7200
Facsimile:  (303) 749-7272
Email:  emma.savory@huschblackwell.com

*Attorneys for Defendant St. Vincent Healthcare*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ROXANNA JACKSON,<br><br>Plaintiff,<br><br>vs.<br><br>ST. VINCENT HEALTHCARE,<br><br>Defendant. | Cause No. CV-15-115-BLG-SPW<br><br>**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

**Defendant's Statement of Undisputed Facts:**

DEN-110673-1

1.   Roxanna Jackson is an individual who, at all relevant times, resided in Billings, Yellowstone County, Montana.  (Doc. 12, p. 2, ¶ 3.A), *Roxanna Jackson Dep.*, 5:24-25; 17:7-8, June 22, 2016, attached as *Exhibit A.*

2.   Plaintiff currently resides in Colorado.  (Doc. 12, p. 2, ¶ 3.A), *Jackson Dep.,* 5:15-17, *Ex. A.*

3.   St. Vincent Healthcare ("St. Vincent") is a Montana public benefit corporation doing business in Billings, Yellowstone County, Montana. (Doc. 12, ¶ 3.B at p. 2); *Exhibit B,* p. 2.

4.   St. Vincent is a charitable corporation.  *Ex. B,* p. 2.

5.   St. Vincent employed Plaintiff as an Instrument Technician or Instrument Tech until August 27, 2014.  *Exhibit C.*

6.   An Instrument Tech assists in disassembling, cleaning, disinfecting, sterilizing and/or storing procedure trays, surgical trays, equipment and also assembles case carts and fills the needs of the Operating Room ("O.R.") for supplies and Instruments.  *Jackson Dep.,* 38:25-39:10, *Ex. A*; *Exhibit D.*

7.   The essential functions of the Instrument Technician are laid out in the job description and include:

  a.  Disassembles carts and follows Universal Precaution for decontamination;
  b.  Sterilizes equipment and instruments, wraps clean supplies and instruments, maintains records for all instruments and transports sterilized items back to the floor;

DEN-110673-1

    c.    Assembles instruments and rechecks all instruments for cleanliness and/or impairment and properly checks power equipment with use of nitrogen;

    d.    Takes measures to allow for easy instrument tracking including maintaining the color coding tape on all instruments, properly using the instrument engraver, reporting and documenting all missing instrument and implants replaced in trays and properly handles loaner instrument tray;

    e.    Inventories and communicates the implant and equipment inventory status with C.P. staff and the O.R. Charge Nurse including current order status, back orders and/or changes;

    f.    Appropriately responds to emergency situations by making sure that all emergency, trauma, and add-on cases are picked properly and sent to the O.R. in a timely manner. Remains knowledgeable in the proper procedure to follow during a cardiac arrest in the O.R.

*Id.*

8.    The job description states the functions of the Instrument Tech position. *Id.*

9.    Plaintiff acknowledged that she read the job description and that she could meet all the requirements for the Instrument Tech position and that the duties and responsibilities may change at any time with notification. *Exhibit E.*

10.    St. Vincent required all Instrument Techs to perform all of the functions of the position because, at times, an Instrument Tech may work alone on a weekend shift or may need to quickly respond to a request for a tray needed for an emergency. *Jackson Dep.,* 38:2-6, 39:8-10, *Ex. A*; *Ex. D.*

11.    Instrument trays were an important aspect of the Instrument Tech's job. *Jackson Dep.,* 104:7-10, *Ex. A.*

3

12.  Plaintiff testified that instrument trays were "100 percent" of an Instrument Tech's job duties. *Id.*

13.  Plaintiff made mistakes when compiling instrument trays. *Jackson Dep.,* 77:19-21, *Ex. A.*

14.  In October 2013, Plaintiff received a correction action. *Jackson Dep.,* 66:19-20, *Ex. A*; *Exhibit F.*

15.  In response to the corrective action, Plaintiff presented St. Vincent with a note from her physician. *Jackson Dep.,* 57:11-17, *Ex. A.*

16.  The note from Plaintiff's physician, Dr. Phillips, dated October 16, 2013, read: "This patient has been classified as special needs and may require additional time to learn and perform certain tasks. She also is a diabetic with a heart condition. Please consider this when performing job evaluations." *Jackson Dep.,* 53:25-54:15, *Ex. A*; *Exhibit G.*

17.  St. Vincent arranged for Plaintiff's evaluation by Dr. Gumm. *Jackson Dep.,* 58:22-59:3, *Ex. A.*

18.  Dr. Gumm provided findings and suggested recommendations for Plaintiff:

> 2.  The patient appears to have a relative strength in her nonverbal abilities. She might learn best by having things demonstrated to her, rather than explained to her orally. She might also need to have more repetition than the typical employee.
>
> 3.  The patient stated that there are some part [sic] of her work that she feels more confident in. She stated that she is not as confident in her skills regarding sterilization of instruments

4

but there are other areas of her work that she is much more comfortable and confident with. She might be allowed to perform some areas of her job that she has more confidence in.

4.      The patient reports that she feels that she has a strained relationship with a new department manager. She might have a third party act as a mediator to ensure that communication is as effective as possible.

*Exhibit H*, p. 4.

19.   Plaintiff only asked for accommodation with the instrumentation area. *Jackson Depo.* 57:18-20, *Ex. A*.

20.   St. Vincent appointed Annette Hoffman to act as a mediator to ensure effective communication between Plaintiff and her new department manager. *Jackson Dep.,* 61:20-62:3, *Ex. A*.

21.   Plaintiff did not ask for anyone else as her mediator. *Jackson Dep.,* 62:4-7, *Ex. A*.

22.   St. Vincent developed a six-week retraining program for Plaintiff. *Jackson Dep.,* 80:13-81:12, *Ex. A*; *Exhibit I*.

23.   During this retraining, Plaintiff worked one-on-one with her manager, Amanda Mordhorst, in the instrumentation area. *Jackson Dep.,* 74:7-9, 76:15-21, *Ex. A*.

24.   Plaintiff did not object to going through the retraining program. *Jackson Dep.,* 76:12-14, *Ex. A*.

DEN-110673-1

25.   Plaintiff successfully completed the retraining program. *Jackson Dep.,* 77:10-14, 83:14-20, *Ex. A.*

26.   Plaintiff testified that during the retraining program, she felt comfortable with and knew how to complete the instrument trays. *Jackson Dep.,* 79:10-12, *Ex. A.*

27.   Plaintiff testified that after the retraining program she felt more comfortable with the instrument trays because she learned a better way to put the instruments in the trays. *Jackson Dep.,* 81:14-15, *Ex. A.*

28.   Plaintiff testified that she understood how to put the instruments on the trays properly. *Jackson Dep.,* 84:19-22, *Ex. A.*

29.   After the retraining program, Plaintiff did not request any additional accommodations. *Jackson Dep.,* 68:10-11, 164:7-10, *Ex. A.*

30.   On June 25, 2014, Plaintiff received a corrective action for mislabeling multiple instruments incorrectly. *Jackson Dep.,* 85:19-22, *Ex. A*; *Exhibit J.*

31.   On July 16, 2014, Plaintiff received a corrective action for insubordination for failing to follow her leader's instruction. *Jackson Dep.,* 91:21-92:6, *Ex. A*; *Exhibit K.*

32.   Plaintiff admitted that she was assigned to work in the instrument area but instead switched job duties with another co-worker and went to the sterilizer operator area. *Jackson Dep.,* 92:20-93:7, *Ex. A.*

6

33. On July 28, 2014, Plaintiff received another corrective action for mislabeling an instrument. *Jackson Dep.*, 94:13-95:1, *Ex. A*; *Exhibit L.*

34. Plaintiff developed a performance improvement plan indicating that she would use reference materials, would double-check the labeling as needed, and would ask questions if she had them. *Jackson Dep.,* 105:11-107:11, *Ex. A*; *Exhibit M*.

35. Plaintiff's performance improvement plan did not indicate that Plaintiff needed any further accommodation. *Ex. M*.

36. On August 17, 2014, Plaintiff entered a sterilized area of the hospital in street clothes, knowing that she should have taken the time to put on a sterilized gown and hairnet. *Jackson Dep.,* 110:5-8, 111:16-112:12, *Ex. A*; *Ex. C*.

37. On August 18, 2014, Plaintiff incorrectly labeled another instrument set and failed to put in a sterilization indicator as required. *Jackson Dep.,* 112:13-113:17, *Ex. A*; *Ex. C*.

38. On August 19, 2014, Plaintiff failed to properly sterilize an instrument. *Jackson Dep.,* 113:25-114:3, 115:19-22, *Ex. A*; *Ex. C*.

39. Finally, on August 21, 2014, Plaintiff failed to place an instrument required for open heart surgery on a tray. *Jackson Dep.,* 119:6-13; 120:14-18, *Ex. A*; *Ex. C*.

DEN-110673-1

40. Plaintiff's mistakes placed patient safety at issue and created safety concerns for the hospital. *Jackson Dep.,* 90:14-20, *Ex. A.*

41. Plaintiff job shadowed for a job in the cafeteria department, but it was not an open position at the time. *Jackson Dep.,* 124:14-125:3, *Ex. A.*

42. Jackson did not indicate that she was interested in any other open position. *Jackson Dep.,* 126:20-128:8, *Ex. A.*

43. On October 9, 2014, Plaintiff filed a Charge of Discrimination alleging age and disability discrimination. (Doc. 12, pp. 2-3, ¶ 3.C); *Exhibit N.*

44. Plaintiff's Charge did not address retaliation. *Id.*

45. The HRB investigated the Charge and found no reasonable cause to believe unlawful discrimination occurred. *Exhibit O*, p. 13.

46. Plaintiff appealed the HRB's finding to the Human Rights Commission, which upheld the no cause finding. *Exhibit P*.

47. During Plaintiff's deposition, Plaintiff did not mention what protected activity she engaged in. *Jackson Dep.,* 164:18-21, *Ex. A.*

48. Plaintiff filed for Social Security Disability Income. On her application, Plaintiff stated, under oath, "I became unable to work because of my disabling condition on August 26, 2014." *Exhibit Q.*

8

DATED this 28th day of October, 2016.

Respectfully submitted,

CRIST, KROGH & NORD, PLLC


By: */s/ Eric Edward Nord*
    Eric Edward Nord

HUSCH BLACKWELL LLP


By: */s/ Emma L. Savory*
    Emma L. Savory

*Attorneys for Defendant St. Vincent Healthcare*

9

DEN-110673-1

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2016, a copy of the foregoing **DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM/ECF |
| | Hand Delivery |
| | Mail |
| | Overnight Delivery Service |
| | Fax |
| 2 | E-Mail |

1.   Clerk, U.S. District Court

2.   Eric E. Holm
     Sather & Holm, PLLC
     2301 Montana Ave., Ste. 202
     P.O. Box 1115
     Billings, MT 59103
     eric@satherandholm.com


By: */s/ Mischelle Mayer*
     Legal Support Team Specialist

10

DEN-110673-1