Eric E. Holm
Ben T. Sather
SATHER & HOLM, PLLC
2301 Montana Ave., Ste. 202
P.O. Box 1115
Billings, MT  59103
Telephone: (406) 294-1700
Facsimile:  (406) 794-0673
eric@satherandholm.com
ben@satherandholm.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| ROXANNA JACKSON, | ) Case No.  CV-15-115-BLG-SPW |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **DECLARATION OF ERIC E.** |
| | ) **HOLM OPPOSING** |
| ST. VINCENT HEALTHCARE, | ) **DEFENDANT'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| Defendant. | ) |
| | ) |

I, Eric E. Holm, declare under penalty of perjury:

1.      I am an attorney representing Plaintiff Mitchell West in the above-captioned matter.  I am over the age of 18, and I have personal knowledge of the matters set forth herein and am competent to testify to them.  I make this Declaration in opposition to Defendant's Motion for Summary Judgment.



1

2.     On April 13, 2015, I advised Human Rights Bureau ("HRB") investigator Meg Bennett that Roxanna would also be pursuing discrimination and retaliation claims.

3.     Attached as Exhibit 1 is a true and accurate copy of emails I exchanged with Bennett on May 7-8, 2015, regarding Roxanna Jackson's HRB claim.

4.     On May 7, 2015, I emailed Bennett noting the claims being pursued were discrimination and retaliation. Ex. 1, p. 6.

5.     On May 8, 2015, I again emailed Bennett stating that claims being alleged were "failure-to-accommodate, discrimination, retaliation." Ex. 1, p. 2.

6.     Subsequently on May 8, 2015, I emailed Bennett, stating, "I have informed you previously that we are also pursuing a claim for retaliation. Please update that in your records if necessary." Ex. 1, p. 1.

7.     Attached as Exhibit 2 is a true and accurate copy of an email I received from Bennett on May 11, 2015, regarding Roxanna Jackson's HRB claim.

8.     On May 11, 2015, Bennett acknowledged our asserted claim for retaliation and stated:

> [T]he Bureau does not have an administrative rule regarding amendments. When a Charging Party chooses to amend new allegations late in the Bureau's investigation, the Bureau typically does not make findings on the new allegations. Here, the Bureau will docket an amended complaint that has been submitted and notice out the parties. The Bureau will ask for

2

acknowledgement of a receipt from Respondent, but will not ask for a detailed response. If a respondent chooses to take issue with the amendment or addition of parties, that can be considered in the next forum (be it district court of by an administrative law judge) that is assuming that the Charging Party chooses to go forward.

Ex. 2.

9.    In discovery in this case, Defendant did not produce a 2012 annual performance evaluation for Roxanna Jackson.

10.    Attached as Exhibit 3 is a true and correct copy of a Disability Report from the Social Security Administration produced by Plaintiff in discovery, listing all of the physical or mental conditions that limit Roxanna's ability to work, including learning disabilities, heart condition, and type 2 diabetes.

I declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

DATED this 17th day of November, 2016.

By:    /s/ Eric E. Holm
        Eric E. Holm



**From: Eric Holm** eric@satherandholm.com
**Subject:** Re: Jackson Interview
**Date:** May 8, 2015 at 4:52 PM
**To:** Bennett, Meg mbennett@mt.gov

Meg:

I have informed you previously that we are also pursuing a claim for retaliation. Please update that in your records if necessary.

As I stated, you can certainly ask Roxanne for the information regarding other employees who entered the area in street clothes when you speak with her on Monday, but I do not know why the charging party's interview waited to be completed until the last week this case is due, and I do not know why that question would not have been asked of any other witness in this investigation prior to now. Are you saying you are refusing to call David Wilcox or St. Vincent's representative to update your interviews of them?

Eric E. Holm
Sather & Holm, PLLC
1631 Zimmerman Tr., Ste. 2
PO Box 22916
Billings, MT 59104
Phone: 406-534-4387
Fax: 406-794-0673
eric@satherandholm.com

This email constitutes a confidential and privileged communication that is protected by law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this email in error, please delete it from your system without copying it, and notify the sender by reply email or by calling Sather & Holm, PLLC, so that our address record can be corrected.

On May 8, 2015, at 11:19 AM, Bennett, Meg <mbennett@mt.gov> wrote:

Thank you. I will arrange my schedule so that I will be available for your call Monday at 4:00.

I would point out that the claim is not filed retaliation. It is filed age and disability.

As for the issue about others wearing street clothes and not being disciplined, I need additional information- names and contact numbers- from Roxanne. Please keep on mind that the Bureau is a neutral third party entity whose role it is to gather information from both parties to analyze. The burden of proof lies with the Charging Party. If David Wilcox wants to call me with the information sought, I would be happy to receive his call.

I look forward to speaking with Roxanne on Monday. Thank you for arranging that.

Regards,

Meg McNelly Bennett

**From:** Eric Holm [eric@satherandholm.com]
**Sent:** Friday, May 08, 2015 9:21 AM
**To:** Bennett, Meg
**Subject:** Re: Jackson Interview

Meg - 4:00 pm on Monday, May 11, will work to finalize Roxanna's interview.

We will talk with you then.

Eric E. Holm
Sather & Holm, PLLC
1631 Zimmerman Tr., Ste. 2
PO Box 22916
Billings, MT 59104
Phone: 406-534-4387



EXHIBIT

tabbies®

1

Fax: 406-794-0673
eric@satherandholm.com

This email constitutes a confidential and privileged communication that is protected by law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this email in error, please delete it from your system without copying it, and notify the sender by reply email or by calling Sather & Holm, PLLC, so that our address record can be corrected.

On May 8, 2015, at 9:13 AM, Eric Holm <eric@satherandholm.com> wrote:

Meg:

Thank you for your email. I want to respond to a couple of issues you raised in your email, and then hopefully we can schedule the completion of Roxanna's interview, so you can complete your FIR.

First, I believe you are misunderstanding the 180-day look-back period, and I want to clarify that as soon as possible. The MHRA requires that a complaint be filed within 180 days after the allegedly unlawful practice occurred. That means that a charging party may only seek adjudication of allegedly discriminatory acts that occurred within those 180 days. The "bad acts" we are alleging in this case (failure-to-accomodate, discrimination, retaliation) took the form of write-ups on 6/25/14, 7/16/14, and 7/28/14, and Roxanna's termination on 8/27/14. These are all within the 180-day deadline that you identified in your email below. The acts that happened before the 180-day deadline are background facts that, while not allegedly unlawful, prove that St. Vincent was on notice of Roxanna's disability for many years, St. Vincent had been accommodating Roxanna for many years, and that Roxanna knew how to do her job and performed it without any discipline whatsoever for many years. You informed me on the phone, and implied the same in your email below, that you are going to refuse to consider this information because it happened before the 180-day deadline. I am concerned because that is not correct under the law, and I want to make sure that is clear before you complete your report in this case, so we do not have to waste Roxanna's time with an objection or lawsuit in District Court. Again, I would ask that you run this issue by an HRB staff attorney if there is still any confusion.

In addition, you raised St. Vincent's argument that Roxanna did not finalize her grievance. I must ask, what additional documents were really necessary to complete Roxanna's grievance? Roxanna had been terminated 8 days prior, and her grievance went into detail as to why the reasons for her termination were unjustified. Perhaps re-read the 8/27/14 termination form and Roxanna's 9/5/14 grievance. It seems quite disingenuous for St. Vincent to say it was unclear what Roxanna was grieving. What else did they think she was grieving? Don't you suspect St. Vincent was on notice of the purpose behind her grievance and that they are just trying to use this as an excuse to not have to investigate the grievance?

Finally, did you ask David Wilcox if anyone else has ever gone into that area in street clothes? Did you ask St. Vincent's HR Rep if they have fired or disciplined anyone else for going into that area in street clothes? You can also ask Roxanna for names at her interview. I am waiting

to hear back from Roxanna to see if she can still be available Monday or Tuesday at 4:00 pm, and when I confirm that, I will let you know.

Thank you.

Eric E. Holm
Sather & Holm, PLLC
1631 Zimmerman Tr., Ste. 2
PO Box 22916
Billings, MT 59104
Phone: 406-534-4387
Fax: 406-794-0673
eric@satherandholm.com

This email constitutes a confidential and privileged communication that is protected by law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this email in error, please delete it from your system without copying it, and notify the sender by reply email or by calling Sather & Holm, PLLC, so that our address record can be corrected.

On May 8, 2015, at 6:47 AM, Bennett, Meg <mbennett@mt.gov> wrote:

Eric,

Thank you for your lengthy response. I am happy to hear that Charging Party is starting a new and, hopefully productive endeavor next week.

Unfortunately, having another investigator finish her interview is not an option as they did not conduct the Respondent interviews, nor would they have the opportunity to review the voluminous file in an effort to determine what needs to happen to finish the interview at this late date. I wonder if Ms. Jackson will get a meal break on Monday or Tuesday that would allow us to complete her interview. If she does not, I will make arrangements to come to work either early or late on Monday or Tuesday to accommodate her schedule. I do not anticipate that the remainder of the interview will take longer than thirty minutes. I would appreciate as much advance notification as possible in order to adjust my schedule as needed.

With regard to your list of "bad acts," the Montana Human Rights Act (MHRA) allows the Bureau to look back 180 days from the date the complaint was docketed, or an outcome to a grievance was obtained. Charging Party's complaint was docketed on October 9, 2014, which means the "lookback" extends back to April 7, 2014. This is the period of time that will be covered in the final investigative report. The only exception to the 180 day "lookback" applies to discrete acts of discrimination that may have occurred in sexual harassment cases.

Ms. Jackson did file a grievance on or about September 5, 2014, which could have had the effect of extending her deadline for filing. Unfortunately, Charging Party did not provide additional documentation requested by the hospital. Respondent sent her a letter on or about September 23, 2014 informing her that it considered the matter closed as it had not been provided with the additional documentation it had asked for.

If there were other employees who entered the restricted area in street clothes, but were not disciplined or terminated, it would be very helpful to have the names and contact information for these individuals so that I might attempt to contact them as soon as possible.

Regarding your comments about the outcome of the Unemployment Insurance Division hearing, the Bureau is not allowed to consider such outcomes as that agency operates under completely different sets of rules and statutes than does the Bureau.

I appreciate your support and assistance in arranging closure to Charging Party's interview and I look forward to speaking with you next week. Thank you very much for the additional information.

Best Regards,

Meg McNelly Bennett

---

**From:** Eric Holm [eric@satherandholm.com]
**Sent:** Thursday, May 07, 2015 11:46 AM
**To:** Bennett, Meg
**Subject:** Re: Jackson Interview

Meg:

Thank you for your email. Roxanna is starting an internship on Monday and cannot jeopardize that opportunity by missing time from work on her first or second day. In the past nine months, Roxanna has gone from being completely independent and living on her own with a steady job to now completely dependent - living with her brother, relying on government disability programs, and looking for any job she is offered. which is only minimal wages or volunteering. Because of this, Roxanna cannot miss her prior commitments on Monday and Tuesday before 4:00 pm. We would ask that someone else from the bureau step in to finish the interview if you are unable to do it at a time Roxanna is available.

Regarding your second question, we do not believe any additional witnesses are necessary other than the ones that have been provided. Without any additional witnesses, the facts on file establish the following:

1. Roxanna performed this same job without discipline for 20+ years.

2. During that time, St. Vincent clearly recognized Roxanna's disabilities and allowed her to perform her duties at an appropriate production level (i.e., speed) and, as stated by David and Heather, by focusing on the less-complicated trays. As a result. St. Vincent was on notice of Roxanna's disabilities and had been accommodating them for years.

3. Roxanna was assigned to a new supervisor in April 2013.

4. On July 24, 2013, Roxanna was forced to meet with David Dobson and Heather Franzel to require her to "increase productivity" (i.e., speed up). This is documented in Roxanna's October 10, 2013, Corrective Action Form. This directly contradicts St. Vincent's position that it never asked her to speed up her work.

5. On October 10, 2013, Roxanna was written-up for not increasing her productivity. This October write-up addresses the July 24, 2013, meeting and follow-up observations that Roxanna had not increased her productivity as they had previously instructed on July 24.

6. Three days later on October 16, 2013, Dr. Phillips wrote an accommodation request that Roxanna be provided additional time. This clearly put St. Vincent on notice (again) of an accommodation request to allow additional time to perform activities; however, St. Vincent had been doing that for 20+ years prior to her new boss coming on board in April 2013, so St. Vincent was already on notice long before this October 16 letter.

7. Instead of accommodating her request, St. Vincent forced Roxanna to undergo a psychological evaluation on November 14, 2013 (which we believe is retaliatory due to its deterrent effect on individuals who request accommodations). Dr. Gumm stated that Roxanna's new boss was not being patient with her (which again constitutes an accommodation request for additional time to perform duties); that Roxanna be instructed more nonverbally; that she focus on tasks in which she is more confident; and that a third-party mediate communications between Roxanna and her new boss.

8. Instead of accommodating those requests, St. Vincent forced Roxanna to undergo additional training through February 2014. Additional training was unnecessary, however, as Roxanna had proven for 20+ years that she knew how to perform her job, and the only prior complaint on October 10, 2013, was lack of "productivity," meaning she went too slow for the new boss's liking.

9. When Roxanna returned to work after training, she attempted to work faster and was disciplined on June 25, 2014, for mislabeling instruments on April 29 and May 13, 2014, and was disciplined on July 28, 2014, for mislabeling an instrument on July 18, 2014.

10. Roxanna was fired on August 27, 2014, for mislabeling instruments on August 18 and 21, 2014.

11. Also included as a reason for termination was not sterilizing a load on August 19, 2014. Roxanna says she put the load in the sterilizer but it was taken out by a co-worker. That co-worker told Roxanna it was her fault and the co-worker originally admitted it to HR, but now she is afraid of retaliation by St. Vincent if she stands up for Roxanna. This is the type of incident that should have been straightened out and would never be grounds for termination.

12. Also included as a reason for her termination was entering a restricted area in street clothes. Other employees without disabilities did this and were not fired, as this also has not been a grounds for termination.

13. Roxanna gave the same testimony at the Unemployment hearing as she has given to you. UE found her credible and ruled in her favor, even saying "Given the issues Jackson has faced throughout her lifetime, it makes sense that she would be prone to making mistakes when she was flustered or under stress." St. Vincent knew this for years and had accommodated her for years, which suddenly stopped and never resumed.

14. There is no documentation showing that Roxanna had ever been disciplined for mislabeling instruments prior to her new boss arriving and instructing Roxanna to increase her productivity.

15. Despite being requested at least twice by Roxanna's medical providers, there is no

documentation showing that St. Vincent attempted to accommodate Roxanna by providing her additional time to perform her job (as she had done previously) or by focusing on less-complicated tasks (as David and Heather say she had done previously).

In sum, we don't believe additional witnesses or documents are necessary to establish that discrimination and retaliation occurred here. You should have all the information you need to make that determination. However, if you are anticipating ruling against Roxanna, we believe it would an abuse of discretion to not at least complete the charging party's interview.

Thank you, let me know if you have any questions.

Eric E. Holm
Sather & Holm, PLLC
1631 Zimmerman Tr., Ste. 2
PO Box 22916
Billings, MT 59104
Phone: 406-534-4387
Fax: 406-794-0673
eric@satherandholm.com

This email constitutes a confidential and privileged communication that is protected by law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this email in error, please delete it from your system without copying it, and notify the sender by reply email or by calling Sather & Holm, PLLC, so that our address record can be corrected.

On May 7, 2015, at 7:11 AM, Bennett, Meg <mbennett@mt.gov> wrote:

Hello Eric,

I thought it would be important to let you know the reason I am out of the office this week is because I am on medical leave. I saw my physician yesterday and she directed me not to return to the office before Monday, May 11th. This means I will only be available to speak with Roxanne Monday or Tuesday between 9 AM and 2PM. Please accept my apologies for any inconvenience this causes for you or your client.

I don't anticipate a lengthy conversation- I just would like to review some of the Respondent's testimony with her and hear her response.

The other issue is the only witness I have for Roxanne is David Wlicox. She gave me a list of other witnesses and I called them, but they all said they have not worked with Roxanne in many years. One said she retired at 62 and she is now 85. It would be helpful to have some witnesses other than David that worked with her in the last 180 days of her employment and can testify on her behalf. If they do not want to speak with me directly, submission of a brief written statement would be just fine.

I would be most appreciative if you will let me know by the end of the week if there is a time I can speak with your client on Monday or Tuesday. If she is simply not available I will do the best I can with the information I already have.

Thanks very much for your assistance and understanding. I look forward to speaking with you next week.

Regards,

Meg McNelly Bennett



From: **Bennett, Meg** mbennett@mt.gov
Subject: Jackson Amendment
Date: May 11, 2015 at 9:40 AM
To: Eric Holm (eric@satherandholm.com) eric@satherandholm.com

Eric,

This is to notify you that nowhere in your communications is there a request to amend the Charging Party's complaint to include retaliation. You did mention what you regarded to be retaliatory behavior, but it does not include a request to amend the complaint. That notation was made in the file on May 7, 2015.

As you are no doubt aware, the Bureau does not have an administrative rule regarding amendments. When a Charging Party chooses to amend new allegations late in the Bureau's investigation, the Bureau typically does not make findings on the new allegations. Here, the Bureau will docket an amended complaint that has been submitted and notice out the parties. The Bureau will ask for acknowledgement of a receipt from Respondent, but will not ask for a detailed response. If a respondent chooses to take issue with the amendment or addition of parties, that can be considered in the next forum (be it district court or by an administrative law judge) that is assuming that the Charging Party chooses to go forward.

I look forward to speaking with Roxanne at 4:00 this afternoon.

Regards,

Meg McNelly Bennett, Investigator
Human Rights Bureau
PO Box 1728
Helena, MT 59624
(406) 444 9024– Phone
(406) 443–3234 – FAX



EXHIBIT

a

Form Approved OMB No. 0960-0579

## DISABILITY REPORT - ADULT - Form SSA-3368

### (3368) Section 1 - Information About the Disabled Person

**1.A.** Name (First, Middle Initial, Last) **Roxanna Kay Jackson**

**1.B.** Social Security Number ███████

**1.C.** Mailing Address (Street or PO Box)    **PO BOX 823**
Include apartment number if applicable, **BILLINGS, MT 59101**
City, State/Province, Zip/Postal Code,
Country (if not USA)

**1.D.** Email Address

**1.E.** Daytime Phone Number, including area code, and the IDD and country codes if you live outside the USA or Canada.
Phone number  **406-927-2776**

Check this box if you do not have a phone or number where we can leave a message

**1.F.** Alternate Phone Number - another number where we may reach you, if any
Alternate phone number

**1.G.** Can you speak and understand English? **Yes**

If no, what language do you prefer?

NOTE: If you cannot speak and understand English, we will provide an interpreter, free of charge.

**1.H.** Can you read and understand English? **Yes**

**1.I.** Can you write more than your name in English? **Yes**

**1.J.** Have you used any other names on your medical or educational records? **No**
Examples are maiden name, other married name or nickname.

If yes, please list them here:

### (3368) Section 2 - Contacts

Give the name of someone **(other than your doctors)** we can contact who knows about your medical conditions, and can help you with your claim.

**2.A.** Name (First, Middle Initial, Last)
**2.B.** Relationship to you:
**2.C.** Daytime Phone Number (as described in 1.E. above)
**2.D.** Mailing Address (Street or PO Box)
Include apartment number or unit if applicable,
City, State/Province, Zip/Postal Code,
Country (if not USA)

**EXHIBIT**

**3**

RJ000578

**2.E.** Can this person speak and understand English?

If no, what language is preferred?

**2.F.** Who is completing this report? **The person who is applying for disability (Go to Section 3 – Medical Conditions)**

## (3368) Section 3 - Medical Conditions

**3.A.** List all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work. If you have cancer, please include the stage and type. List each condition separately.

| 1. learnings disabilities |
|---|
| 2. heart condition |
| 3. type 2 diabetes |

**3.B.** What is your height without shoes? **5' 3"**

**3.C.** What is your weight without shoes? **260 lbs.**

**3.D.** Do your conditions cause you pain or other symptoms? **Yes**

## (3368) Section 4 - Work Activity

**4.A.** Are you currently working?

**No, I have stopped working** (Go to question 4.C. below)

### IF YOU HAVE NEVER WORKED:

**4.B.** When do you believe your condition(s) became severe enough to keep you from working (even though you have never worked)? (month/day/year)

### IF YOU HAVE STOPPED WORKING:

**4.C.** When did you stop working? (month/day/year)

**08/26/2014**

Why did you stop working?

**Because of my condition(s).**

**4.D.** Did your condition(s) cause you to make changes in your work activity? (for example: job duties, hours or rate of pay)

No (Go to Section 5 - Education and Training)

**4.E.** Since the date in 4.D. above, have you had gross earnings greater than $1070 in any month? Do not count sick leave, vacation, or disability pay. (We may contact you for more information.)

### IF YOU ARE CURRENTLY WORKING:

**4.F.** Has your condition(s) caused you to make changes in your work activity? (for example: job duties or hours)

**4.G.** Since your condition(s) first bothered you, have you had gross earnings greater than $1070 in any month? Do not count sick leave, vacation, or disability pay. (We may contact you for more information.)

RJ000579

## (3368) Section 5 - Education and Training Information

**5.A.** Check the highest grade of school completed. **12th grade**

Date Completed:                                 **1973**

**5.B.** Did you attend special education classes? **Yes**

| | |
|---|---|
| Name of School: | **Senior High School** |
| City, State/Province, Country (if not USA) | **425 Grand Ave** |
| | **Billings, MT 59101** |
| Dates attended special education classes: | from **1969** to **1973** |

**5.C.** Have you completed any type of specialized job training, trade or vocational school?
**No**

## (3368) Section 6 - Job History

**6.A.** List the jobs (up to 5) that you had in the 15 years before you became unable to work because of your physical or mental conditions. List your most recent job first.

**Check here and go to Section 7 on page 5 if you did not work at all in the 15 years before you became unable to work.**

| Job Title | Type of Business | Dates Worked | | Hours | Days | Rate Of Pay | |
|---|---|---|---|---|---|---|---|
| | | From mm/yy | To mm/yy | Per Day | Per Week | Amount | Frequency |
| instrument tech | hospital | 1977 | 08/26/2014 | 8 | 5 | $16.00 | Hour |

**Check the box below that applies to you.**

**I had only one job in the last 15 years before I became unable to work. Answer the questions below.**

**Do not** complete this page if you had **more than one job** in the last 15 years before you became unable to work.

RJ000580

**6.B.** Describe this job: What did you do all day?

**I would clean the instruments used in surgery like scissors all day long**

**6.C.** In this job, did you:

Use machines, tools or equipment? **No**

Use technical knowledge or skills? **No**

Do any writing, complete reports, or perform any duties like this? **No**

**6.D.** In this job, how many total hours each day did you do each of the tasks listed:

| Task | Hours | Task | Hours | Task | Hours |
|------|-------|------|-------|------|-------|
| Walk | 1 | Stoop (Bend down & forward at the waist) | 0 | Handle large objects | 0 |
| Stand | 6 | Kneel (Bend legs to rest on knees) | 0 | Write, type or handle small objects | 1 |
| Sit | 1 | Crouch (Bend legs & back down & forward) | 0 | Reach | 1 |
| Climb | 0 | Crawl (Move on hands & knees) | 0 | | |

**6.E.** Lifting and carrying (Explain in the box below, what you lifted, how far you carried it, and how often you did this in your job): **I would have to lift 50-60 pounds about 1-2 feet, all day**

**6.F.** Check **heaviest** weight lifted: **50 lbs.**

**6.G.** Check weight **frequently** lifted (by frequently, we mean from 1/3 to 2/3 of the workday.): **25 lbs.**

**6.H.** Did you supervise other people in this job? **No**

How many people did you supervise?

What part of your time did you spend supervising people?

Did you hire and fire employees?

**6.I.** Were you a lead worker? **No**

## (3368) Section 7 - Medicines

7. Are you taking any medicines (prescription or non-prescription)?

**Yes** (Give the information requested below. You may need to look at your medicine containers.)

| Name of Medicine | If prescribed, give name of doctor | Reason for medicine |
|------------------|-----------------------------------|---------------------|
| **digotoxin, metprolol, potassium, tramadol, simvastatin** | **ST VINCENT HOSP & HEALTHCARE** | **all conditions** |
| **prilosec, bayer, fishoil** | **ST VINCENT HOSP & HEALTHCARE** | **all conditions** |
| **warfarin, metformin, fluticasone spray, hydrochlorathiazide** | **ST VINCENT HOSP & HEALTHCARE** | **all conditions** |

RJ000581

**(3368) Section 8 - Medical Treatment**

Have you seen a doctor or other health care professional or received treatment at a hospital or clinic, or **do you have a future appointment scheduled:**

**8.A.** For any **physical** condition(s)?
Yes

**8.B.** For any **mental** condition(s) (**including emotional or learning problems**)?
Yes

**If you answered "No" to both 8.A. and 8.B., go to Section 9 - Other Medical Information on page 11.**

Tell us who may have medical records about any of your physical and/or mental condition(s) (including emotional or learning problems) that limit your ability to work. This includes doctors' offices, hospitals (including emergency room visits), clinics, and other health care facilities. Tell us about your next appointment, if you have one scheduled.

| 8.C. Name of Facility or Office | RIVERSTONE CLINIC | | | | |
|---|---|---|---|---|---|
| Name of health care professional who treated you | | | | | |
| **ALL OF THE QUESTIONS ON THIS PAGE REFER TO THE HEALTH CARE PROVIDER ABOVE.** | | | | | |
| Phone Number | 406-247-3350 | | Patient ID# (if known) | | |
| Mailing Address | MEDICAL RECORDS 123 S 27TH ST BILLINGS, MT 59101 | | | | |

**Dates of Treatment**

| 1. Office, Clinic or Outpatient visits | | 2. Emergency Room visits List the most recent date first | | 3. Overnight hospital stays List the most recent date first | | | |
|---|---|---|---|---|---|---|---|
| First Visit | 07/2014 | A. | | A. Date in | | Date out | |
| Last Visit | 10/2014 | B. | | B. Date in | | Date out | |
| Next scheduled appointment (if any) | every two weeks | C. | | C. Date in | | Date out | |

**What medical conditions were treated or evaluated?**

all conditions

**What treatment did you receive for the above conditions?** (Do not describe medicines or tests in this box.)

see records

Check the boxes below for any tests this provider performed or sent you to, or has scheduled you to take. Please provide dates for past and future tests. If you need to list more tests, use Section 11 - Remarks.

Check this box if no tests by this provider or at this facility.

| Kind of Test | Dates of Tests |
|---|---|
| Blood test (Not HIV) | 2014 |

| 8.D. Name of Facility or Office | ST VINCENT HOSP & HEALTHCARE |
|---|---|
| Name of health care professional who treated you | phillips |

### ALL OF THE QUESTIONS ON THIS PAGE REFER TO THE HEALTH CARE PROVIDER ABOVE.

| Phone Number | 406-237-3250 | Patient ID# (if known) | |
|---|---|---|---|
| Mailing Address | MEDICAL RECORDS DEPT<br>PO BOX 35200<br>BILLINGS, MT 59107-5200 | | |

**Dates of Treatment**

| 1. Office, Clinic or Outpatient visits | | 2. Emergency Room visits<br>List the most recent date first | | 3. Overnight hospital stays<br>List the most recent date first | | | |
|---|---|---|---|---|---|---|---|
| First Visit | 2000 | A. | | A. Date in | | Date out | |
| Last Visit | 08/2014 | B. | | B. Date in | | Date out | |
| Next scheduled appointment (if any) | pending | C. | | C. Date in | | Date out | |

**What medical conditions were treated or evaluated?**

all conditions

**What treatment did you receive for the above conditions?** (Do not describe medicines or tests in this box.)

see records

Check the boxes below for any tests this provider performed or sent you to, or has scheduled you to take. Please give the dates for past and future tests. If you need to list more tests, use Section 11 - Remarks.

**Check this box if no tests by this provider or at this facility.**

| Kind of Test | Dates of Tests |
|---|---|
| EKG (Heart test) | 2014 |

**(3368) Section 9 - Other Medical Information**

RJ000583

**9.** Does anyone else have medical information about any of your physical and/or mental condition(s) (including emotional and learning problems), or are you scheduled to see anyone else? (This may include places such as workers' compensation, vocational rehabilitation, insurance companies who have paid you disability benefits, prisons, attorneys, social service agencies and welfare.)

**No** (If you are receiving Supplemental Security Income (SSI) and have been asked to complete this report, go to Section 10 - Vocational Rehabilitation; if not, go to Section 11.)

---

## COMPLETE THIS SECTION ONLY IF YOU ARE ALREADY RECEIVING SSI.

## (3368) Section 10 - Vocational Rehabilitation, Employment, or Other Support Services

---

**10.A.** Have you participated, or are you participating in:

- An individual work plan with an employment network under the Ticket to Work Program;
- An individualized plan for employment with a vocational rehabilitation agency or any other organization;
- A Plan to Achieve Self-Support (PASS);
- An individualized education program (IEP) through a school (if a student age 18 - 21); or
- Any program providing vocational rehabilitation, employment services, or other support services to help you go to work?

---

## (3368) Section 11 - Remarks

---

Please write any additional information you did not give in earlier parts of this report. If you did not have enough space in the sections of this report to write the requested information, please use this space to tell us the additional information requested in those sections. Be sure to show the section to which you are referring.

---

| Date Report Completed | ▶ _____ / _____ / _____ RJ000584 |
|---|---|
| | (Month)    (Day)      (Year) |